UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-mj-8582-WM

UNITED STATES OF AMERICA,

          Plaintiff,

vs.

JAVIER GABRIO ANDERSON,

          Defendant.
_____/

FILED BY ___SW___ D.C.

Nov 17, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Miami Office of the United States Attorney's Office prior to July 20, 2008?

    Yes      X **No**

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office (West Palm Beach Office) only prior to December 18, 2011?

    Yes      X **No**

3. Did this matter originate from a matter pending in the Fort Pierce Office of the United States Attorney's Office prior to August 8, 2014?

    Yes      X **No**

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

BY: _/s/ John C. McMillan_
JOHN C. McMILLAN
ASSISTANT UNITED STATES ATTORNEY
Admin. No. A5500228
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
Office: (561) 820-8711
John.mcmillan@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>JAVIER GABRIO ANDERSON,<br><br>*Defendant(s)* | Case No. ~~22-MJ-8177-BMM~~<br><br>23-mj-8582-Matthewman |

FILED BY ___SW___ D.C.
Nov 17, 2023
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __09/17/2023__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) | Possession with Intent to Distribute a Controlled Substance, to wit, Fentanyl and Cocaine; |
| 18 U.S.C. § 924(c)(1)(A) | Possession of a firearm in furtherance of a federal drug trafficking crime; and |
| 18 U.S.C. §§ 922(g)(1), 924(e) | Felon in Possession of a Firearm (Armed Career Criminal); |

This criminal complaint is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Kevin W. Drummond, Task Force Officer, ATF
*Printed name and title*

Subscribed and sworn to before me in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone (Facetime).

Date: __11/17/2023__

_____
*Judge's signature*

City and state: __West Palm Beach, Florida__   Hon. William Matthewman, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**A CRIMINAL COMPLAINT**
Case No. 23-mj-8582-WM

Your affiant, Kevin W. Drummond, being first duly sworn, does hereby depose and state as follows:

**INTRODUCTION**

1. Your affiant, Kevin W. Drummond, is a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and has served in that capacity since November 2017. Your affiant is also a duly sworn Deputy Sheriff in and for Palm Beach County, Florida. In total, your affiant has approximately 20 years of law enforcement experience. As a Task Force Officer with ATF, your affiant's duties and responsibilities include conducting criminal investigations of individuals that have violated federal laws, particularly laws contained in Titles 18 and 21 of the United States Code. During your affiant's tenure with ATF and PBSO, your affiant has participated in excess of over three hundred (300) investigations related to the illegal sale, purchase, use, possession and distribution of illicit narcotics to include marijuana, cocaine, heroin, ecstasy and fentanyl.

2. Your affiant submits this affidavit in support of a criminal complaint charging **Javier Gabrio ANDERSON,** with the following violations of federal law: (1) Possession With Intent to Distribute a Controlled Substance, to wit, Fentanyl and Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); (2) Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A), and (3) Felon in possession of a Firearm (Armed Career Criminal Act), in violation of 18 U.S.C. §§ 924(g)(1), 924(e). These violations occurred in the Southern District of Florida.

3. The facts contained in this Affidavit are based on information elicited to me from my own investigation, and information and evidence relayed to me by other law enforcement officers with personal knowledge of the events described herein. Because this affidavit is submitted for the limited purpose of obtaining a criminal complaint, it does not contain all the facts known to me about the investigation, but rather, those facts that I submit establish probable cause of the offenses listed herein.

## **PROBABLE CAUSE**

4. In September 2023, your affiant was contacted by Corporal (Cpl.) Soler of the Palm Beach County Sheriff's Office (PBSO) road patrol in reference to an incident involving Javier ANDERSON being in possession of a firearm as well as narcotics. Cpl. Soler advised your affiant of the following information related to this incident, much of which, your affiant notes, was audio and video recorded on Body Worn Camera (BWC) footage by the deputies involved:

5. On September 17, 2023, at approximately 3:52 a.m., Cpl. Soler responded to the 4500 Block of Elmhurst Road, within the unincorporated area of West Palm Beach, Palm Beach County, Southern District of Florida, as an additional back up unit, for Deputy Sheriff (D/S) Kenny, as he conducted a traffic stop on a black in color bicycle, which was operated and driven by the subject, Javier ANDERSON, who was subsequently identified through Florida DHSMV records. It was reported that D/S Kenny initiated a traffic stop on the black colored bicycle operated by ANDERSON as the bicycle did not possess a lamp and reflector on the rear exhibiting a red light visible from a distance of 600 feet to the rear. The bicycle was observed to be in violation of F.S.S. 316.2065(7).[1] DS Kenny initiated the traffic stop utilizing the red and blue emergency lights

---

[1] That statute provides in pertinent part as follows: "(7) Every bicycle in use between sunset and sunrise shall be equipped with . . . a lamp and reflector on the rear each exhibiting a red light visible from a distance of 600 feet to the rear. A bicycle or its rider may be equipped with lights

2

of his marked PBSO patrol vehicle. Shortly after initiating his stop of ANDERSON and attempting to obtain his information in connection with the observed violation, ANDERSON actively resisted, obstructed and opposed D/S Sheriff Kenny in the lawful execution of his legal duty by fleeing on foot and attempting to mount his bicycle. After unsuccessfully attempting to mount his bicycle and crashing to the ground, ANDERSON continued his flight on foot, running away from D/S Kenny who repeatedly shouted for him to stop.

6. Upon arrival, Cpl. Soler observed D/S Kenny initiate a foot pursuit behind ANDERSON as he was actively fleeing on foot, during the course and commission of the lawful traffic stop. ANDERSON was initially running East on Elmhurst Road, and was observed wearing a black colored T-Shirt, dark blue jean shorts, and a red colored drawstring bag, which was worn affixed and attached to his back, as he was actively running and fleeing from law enforcement. It should be noted, Cpl. Soler and D/S Kenny were wearing green colored PBSO issued Class "B" uniforms, with a five point star badge affixed to the upper left breast portion of their outer vest carriers, and with attached corresponding insignia, clearly identifying them as Law Enforcement.

7. D/S Kenny proceeded to pursue ANDERSON and provided lawful instruction for him to stop and get on the ground. ANDERSON disobeyed D/S Kenny's lawful commands and continued to run towards the residence located at 4586 Elmhurst Road traveling south. As D/S Kenny attempted to acquire control of ANDERSON by physically grab him, ANDERSON responded by physically punching D/S Kenny in his right eye. D/S Kenny was not able to gain control of ANDERSON as ANDERSON continued to run with the red and black colored Jordan brand draw string bag worn and affixed to his back. Cpl. Soler tackled ANDERSON and as they

---

or reflectors in addition to those required by this section. A law enforcement officer may . . . issue a citation and assess a fine for a pedestrian violation as provided in s. 318.18."

fell within the backyard of the residence, located at 4586 Elmhurst Road, ANDERSON was again lawfully instructed to surrender his hands so that handcuffs could be applied to his wrists. Instead of complying, however, ANDERSON continued to resist by physically tensing his arms and did not allow Cpl. Soler and D/S Kenny to acquire control of his arms. As ANDERSON continued to physically resist the deputies, Cpl. Soler attempted to gain control/compliance by utilizing his PBSO issued TASER 7 Dart Firing Stun Gun. Cpl. Soler issued two (2) deployments which were ineffective.

8. ANDERSON was then able to stand back up on his feet and continued running, traveling south towards Myla Lane. Cpl. Soler then proceeded to pursue him on foot and issued subsequent drive stuns from the TASER towards Anderson's torso, which induced some degree of electro-muscular incapacitation. During this time Cpl. Soler and ANDERSON both fell in a lot of garden vegetation within the front yard of the residence located at 4563 Myla Lane, West Palm Beach, Palm Beach County, Southern District of Florida. ANDERSON then attempted to forcibly grab Cpl. Soler's TASER 7 from Cpl. Soler's possession, which caused Cpl. Soler to fear ANDERSON would attempt to use the TASER against him if ANDERSON was able to gain control of the device.

9. A struggle ensued for a short duration with several other deputies arriving on scene to assist in restraining ANDERSON. Subsequently, Cpl. Soler and PBSO D/S Bumgardner were able to acquire compliance and control of ANDERSON, and handcuffs were applied to his wrists.

10. After the scene was safe a search was then conducted of the red and black colored Jordan brand draw string bag, which ANDERSON was wearing on his back and possessed during the course of the law enforcement interaction and incident. During the course of the search of ANDERSON's bag incident to his arrest, deputies recovered a Taurus Model G2C, 9mm semi-

automatic pistol, bearing serial number TLM85759, from within the bag ANDERSON possessed during the entirety of this interaction and his flight from law enforcement. The firearm was loaded with an unknown number of rounds of live ammunition, with and an extended magazine attached in the magazine well of the firearm and one (1) 9 mm round of ammunition loaded into the chamber of the firearm. The firearm was run through FCIC/NCIC and came back clear, not reported stolen.

11. Through your affiants investigation, and Court records obtained from the Palm Beach County Circuit Court (PBCCC), your affiant determined that at all times material hereto, that is, prior to September 17, 2023, defendant ANDERSON possessed at least the following felony convictions, each of which was punishable for a term of imprisonment exceeding one year under Florida law (18 U.S.C. § 922(e) predicate offenses are related in bold font for the Court's information):

   a. On or about December 9, 2016 ANDERSON was adjudicated guilty for Carrying a Concealed Firearm in PBCCC Case No. 502015CF011391AXXXMB (Offense date: November 14, 2015);

   b. **On or about December 9, 2016 ANDERSON was adjudicated guilty for Sale of Heroin and Sale of Cocaine in PBCCC Case No. 502015CF012318AXXXMB (Offense date December 8, 2015);**

   c. **On or about December 9, 2016 ANDERSON was adjudicated guilty for Sale of Heroin and Sale of Cocaine in PBCCC Case No. 502015CF012319AXXXMB (Offense date December 3, 2015).**

   d. On or about December 9, 2016, ANDERSON was adjudicated guilty for Possession of Cocaine, Possession of marijuana in excess of twenty (20) grams, Possession of

      Heroin, and Possession of a firearm with an altered Serial number in PBCCC Case No. 502015CF012374AXXXMB (Offense date December 15, 2015);

  e. On or about December 9, 2016 ANDERSON was adjudicated guilty for Carrying a Concealed Firearm in PBCCC Case No. 502016CF010756BXXXMB (Offense date November 2, 2016);

  f. **On or about August 26, 2019, ANDERSON was adjudicated guilty for Sale of Ecstasy in PBCCC Case No. 502019CF002751AXXXMB (Offense date March 18, 2019)**;

  g. On or about August 26, 2019, ANDERSON was adjudicated guilty for <u>Felon in Possession of a Firearm</u>, Sale of Marijuana, Unlawful use of a Two-Way Communication Device, and Possession of Cocaine reference court case number 502019CF002753AXXXMB (Offense date March 22, 2019).

  h. August 26, 2019 ANDERSON was adjudicated guilty for Felon in Possession of a Firearm, Possession of Fentanyl, and Possession of cocaine reference court case number 502019CF005318AXXXMB (Occurrence date June 5, 2019).

12.    In addition to the aforementioned Taurus 9mm caliber semi-automatic pistol, the following items were located and recovered from within the same red and black colored Jordan brand draw string bag:

  a. One (1) Small Clear Plastic Bag which contained eight (8) clear gelatin capsules, which possessed a purple in color coarse powder.

  b. One (1) Small Clear Plastic Bag, which contained three (3) clear gelatin capsules, which possessed a gray in color coarse powder.

  c. One (1) clear gelatin capsule which possessed a purple in color coarse powder.

       d. A Fast Weigh TR-100 Series Digital Scale.

13. A search incident to arrest of the dark blue denim shorts ANDERSON was wearing yielded the following:

       a. A bundle of approximately four hundred and thirty four dollars cash ($434.00) in various denominations of U.S. currency within a pocket of the dark blue denim shorts he was wearing.

       b. A small clear plastic bag containing white crystalline jagged edge rocks, approximately two (2) grams, within the front right pocket of ANDERSON's shorts.

14. The capsules above were submitted to the PBSO Chemistry Laboratory for analysis. The following are the results received: The three (3) clear gelatin capsules, which possessed a gray in color coarse powder were confirmed to be Fentanyl with a net weight of 0.514 grams. The one (1) clear gelatin capsule, which possessed a purple in color coarse powder was confirmed to be Fentanyl with a net weight of 0.1413 grams. The eight (8) clear gelatin capsules, which possessed a purple in color coarse powder were confirmed to be Fentanyl with a net weight of 1.045 grams. The total net weight of the Fentanyl was 1.700 grams. The white crystalline jagged edge rocks located in ANDERSON's pants pocket were confirmed to be cocaine with a net weight of 1.3891 grams. Your affiant knows based on his training and experience these items were packaged for sale and distribution and not for personal use.

15. After ANDERSON was in custody and secured, as recorded on BWC, Cpl. Soler read and advised ANDERSON of his constitutional *Miranda* rights, utilizing a PBSO-issued *Miranda* warnings card, after which ANDERSON acknowledged and advised he understood his rights. Post-*Miranda*, ANDERSON provided admittance that the firearm was within the book bag,

and inquired what he did that was so wrong that the firearm is not illegal even if one is convicted or not. ANDERSON further stated he should have the right to protect himself. ANDERSON additionally advised that the located capsules were in fact drugs, and that he uses drugs as it is his own body. ANDERSON also inquired what is so wrong about him carrying a gun that it's legal and that he had it in a book bag.

16. The charges listed above that have been bolded are the charges that would qualify ANDERSON for the Armed Career Criminal Act. It should be noted that although the conviction dates for some of these charges are the same, the offense occurrence date is different. Meaning each one of the above charges that are being considered and utilized to qualify ANDERSON as an Armed Career Criminal, occurred on different days. Therefore, it is your affiant's belief that ANDERSON is in fact an Armed Career Criminal per Federal Statute.

17. During this incident ANDERSON left his cellular phone on the hood of D/S Kenny's vehicle when he fled from D/S Kenny. Cpl. Soler drafted and obtained a State cellular extraction search warrant for ANDERSON's cellular phone. The cellular extraction was completed on October 25, 2023 by the PBSO Computer Crimes Unit. Your affiant began reviewing the information on the cellular extraction report. The following is a synopsis of the information relevant to this case that was located on ANDERSON's cellular phone. This does not include all the information your affiant reviewed on the phone but merely the portions your affiant submits is relevant to establishing probable cause.

18. Upon reviewing the text messages within the cellular device, your affiant located the following conversation that occurred on August 9, 2023 between phone number 561-764-1695 (Jenn) and 516-444-9703 (This phone number was confirmed through the extraction report to be the number associated with the device that was recovered belonging to ANDERSON). This

number was also confirmed to be the number for ANDERSON related to another investigation as ANDERSON gave this number to an undercover agent:

**561-764-1695 (Jenn):** "You could put 100$ in hard"

**516-444-9703 (ANDERSON):** "I gotchu"

**516-444-9703 (ANDERSON):** "Da new hats are too"

**561-764-1695 (Jenn):** "OK 100 hard and a hat"

19. Your affiant knows from his training and experience, "Hard" is common street terminology utilized to describe crack cocaine. Your affiant also knows based on his training and experience, "Hat" is common street terminology utilized to identify a capsule of Heroin or Fentanyl. It appears to your affiant, that based on his training and experience, the currently unidentified subject using the number 561-764-1695 is attempting to buy one hundred (100) dollars' worth of crack cocaine ("hard") and a capsule of Heroin or Fentanyl ("a hat") from ANDERSON.

20. Upon reviewing the text messages further within the cellular device, your affiant located the following conversation that occurred on August 20, 2023 between phone number 561-764-1695 (Jenn) and 516-444-9703, your affiant located the following conversation:

**561-764-1695 (Jenn):** "I need a dub of hard. But I can't get out there. I was thinking you could put the 5 from last night towards gas"

**516-444-9703 (ANDERSON):** "wat from last night?"

**516-444-9703 (ANDERSON):** "I dnt owe u 5"

**561-764-1695 (Jenn):** "Yeah and I have 22$ for hard"

21. As stated previously, your affiant knows from his training and experience, "Hard" is common street terminology utilized to describe crack cocaine. Your affiant also knows based

9

on his training and experience, "Dub" is common street terminology utilized to identify twenty (20). It appears to your affiant based on his training and experience in this conversation the number 561-764-1695 is attempting to buy twenty (20) dollars' worth of crack cocaine from ANDERSON.

22. Upon reviewing the text messages further within the cellular device, your affiant located the following conversation that occurred on August 24, 2023 between phone number 561-764-1695 (Jenn) and 516-444-9703, your affiant located the following message:

> **561-764-1695 (Jenn):** "Back on my phone. BTW this brown fet is legit .like idk if my tolerance went down or what. But damn. I'm falling asleep standing up lol"

Your affiant knows from his training and experience, "fet" is common street terminology utilized to describe fentanyl. It appears based on this message the individual has used some fentanyl they received from ANDERSON and telling ANDERSON how good it is.

23. Your affiant located another conversation on August 4, 2023 between number 561-240-8020 (Sally) and 516-444-9703 (ANDERSON):

> **561-240-8020 (Sally):** "I need fetty but I bonly got 18"
>
> **516-444-9703 (ANDERSON):** "Aiit meet me by da back fence on cherry"

Your affiant knows from his training and experience, "fetty" is another term that is common street terminology utilized to describe Fentanyl. It appears based on this message the individual is attempting to buy eighteen (18) dollars of Fentanyl from ANDERSON.

24. Your affiant located another conversation on August 24, 2023 between number 786-855-9169 (Lyn) and 516-444-9703 (ANDERSON):

> **786-855-9169 (Lyn):** "Need a hat"
>
> **516-444-9703 (ANDERSON):** "Gt u whn I gt ovr thr"
>
> **786-855-9169 (Lyn):** "U know when"

>786-855-9169 (Lyn): "No rush"
>
>516-444-9703 (ANDERSON): "im on chrry"

As stated previously, "Hat" is common street terminology utilized to identify a capsule of Heroin or Fentanyl. It appears the individual in this message is trying to purchase one (1) capsule of Heroin or Fentanyl. ANDERSON tells the individual, "im on chrry". Your affiant knows based on his knowledge of the area as well as knowledge of ANDERSON based on this investigation as well as other investigations related to ANDERSON, "chrry" is a reference to Cherry Road, located in Palm Beach County, Southern District of Florida, which is an area ANDERSON has been known to sell narcotics and is in close proximity to the area where ANDERSON lives.

25. Your affiant knows based on his training, experience, and knowledge related to narcotics, narcotics sales, and narcotics dealers, ANDERSON is conducting narcotics sales through the text messages in his cellular phone. Your affiant knows the terms being used and the context of the conversations is consistent with narcotics sales and not narcotics use as ANDERSON previously stated during his interview with Cpl. Soler. Therefore, it is clear to your affiant that ANDERSON is a narcotics dealer and is selling not only crack cocaine but also, heroin and fentanyl. It should be noted that when ANDERSON was apprehended in this case as stated previously he had crack cocaine and fentanyl in the red backpack with the firearm.

26. Your affiant further knows, based on his training and experience, that narcotics dealers who are selling narcotics will commonly keep a firearm on their person. These individuals will keep the firearms on their person as protection. They do this as street level narcotics dealing is inherently dangerous. Dealers have the danger of not only being robbed for their narcotics but for the large sums of cash that can be generated from narcotics sales. Therefore, they will keep a

firearm on them when they have narcotics or large sums of cash as protection from being robbed of the narcotics or cash.

27.     On November 16, 2023, your affiant consulted with PBSO Detective Stephen Barborini. Prior to his employment with PBSO, Detective Barborini served as the Resident Agent in Charge of the West Palm Beach ATF Office, and has been admitted as a firearms expert and interstate commerce expert in the United States District Court for the Southern District of Florida on over 25 prior occasions. Detective Barborini advised that the Taurus G2C pistol in question was manufactured in the country of Brazil.  Accordingly, your affiant submits that by its subsequent recovery in Florida, said firearm of necessity traveled in and affected foreign commerce.

## CONCLUSION

WHEREFORE, on the basis of the facts and circumstances set forth above, your affiant respectfully submits probable cause exists to charge **Javier Gabrio ANDERSON,** with the following violations of federal law: (1) Possession With Intent to Distribute a Controlled Substance, to wit, Fentanyl and Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); (2) Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C.

§ 924(c)(1)(A), and (3) Felon in possession of a Firearm (Armed Career Criminal Act), in violation of 18 U.S.C. §§ 924(g)(1), 924(e).

    FURTHER YOUR AFFIANT SAITH NAUGHT

---
Kevin W. Drummond,
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms & Explosives

ATTESTED TO ME TELEPHONICALLY
(VIA FACETIME) BY THE APPLICANT
IN ACCORDANCE WITH THE REQUIREMENTS
OF FED. R. CRIM. P. 4.1 THIS 17TH
DAY OF NOVEMBER.

---
**HON. WILLIAM MATTHEWMAN**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** JAVIER GABRIO ANDERSON

**Case No:** 23-mj-8582-WM

**Count # 1**

**Possession with the Intent to Distribute and Distribution of a Controlled Substance (Fentanyl and Cocaine)**
**Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C)**
* **Max. Term of Imprisonment:** Twenty (20) years
* **Mandatory Min. Term of Imprisonment (if applicable):** not applicable
* **Max. Supervised Release:** Life
* **Max. Fine:** $1,000,000.00
* **Special Assessment:** $100.00
* **Immigration Consequences of Removal (Deportation)** if the defendant in not a U.S. Citizen, following conviction.

**Count # 2**
**Possession of a Firearm in Furtherance of a Federal Drug Trafficking Crime**
**Title 18, United States Code, Section 924(c)(1)(A)**
* **Max. Term of Imprisonment:** Life
* **Mandatory Min. Term of Imprisonment (if applicable):** 5 years' imprisonment consecutive to any other term of imprisonment imposed.
* **Max. Supervised Release:** Five (5) years
* **Max. Fine:** $250,000.00
* **Special Assessment:** $100.00
* **Immigration Consequences of Removal (Deportation)** if the defendant in not a U.S. Citizen, following conviction.

**Count # 3**
**Possession of Firearm by a Convicted Felon**
**Title 18, United States Code, Sections 922(g)(1), 924(e)**
* **Max. Term of Imprisonment:** life
* **Mandatory Min. Term of Imprisonment (if applicable):** 15 years' imprisonment
* **Max. Supervised Release:** Five (5) years
* **Max. Fine:** $250,000.00
* **Special Assessment:** $100.00
* **Immigration Consequences of Removal (Deportation)** if the defendant in not a U.S. Citizen, following conviction.